IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEREMY FORNOFF                                                                PLAINTIFF

v.                              CIVIL NO. 10-5103

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                 DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jeremy Fornoff, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on November 15, 2005, alleging an inability to work since September 24, 2001, due to reflex sympathetic

dystrophy,[1] depression, knee pain, pain in the low back, and left ankle pain.[2] (Tr. 189-193, 266). For DIB purposes, Plaintiff maintained insured status through December 31, 2006. (Tr. 194). An administrative hearing was held on December 6, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 361-384).

By written decision dated March 20, 2008, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.16). Specifically, the ALJ found Plaintiff had the following severe impairments: hyper-mobility of the right patella with anterior knee pain. However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16-17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to

> perform medium work, including the ability to lift and/or carry and push and/or pull 21-50 pounds occasionally, 11-20 pounds frequently and up to 10 pounds constantly; stand for 1 hour at a time for a total of 4 hours in an 8-hour day; walk without any assistive device for 1 hour at a time for a total of 4 in an 8-hour day; and sit for 2 hours at a time for a total of 8 hours in an 8-hour day; reach, handle, finger, feel and push/pull continuously with either the dominant right hand or the non-dominant left hand; occasionally operate foot controls with the right foot and frequently operate foot controls with the left foot; never climb ramps, stairs, ladders or scaffolds, occasionally balance, continuously stoop, kneel, crouch, and crawl; and continuously tolerate exposure to unprotected heights, moving

---

[1] Reflex sympathetic dystrophy is defined as a complex regional pain syndrome. Dorland's Illustrated Medical Dictionary at 591, 31st Edition (2007).

[2] Plaintiff filed prior DIB and SSI applications for benefits on October 8, 2002. (Tr. 61). Those applications were denied initially and on reconsideration and a hearing was held on July 23, 2003. (Tr. 42). An ALJ issued an unfavorable decision on September 25, 2003. (Tr. 54, 167-175). The Appeals Council denied a request to review the ALJ's decision on November 20, 2003. (Tr. 54-57). Plaintiff did not pursue his remedies for review. Thus, the Commissioner's previous denial of disability is not now before the Court and the Court has no jurisdiction to review that action of the Commissioner. Robbins v. Secretary of HHS, 895 F.2d 1223, 1224 (8th Cir. 1990). Due to the fact that Plaintiff alleged an onset of disability of September 24, 2001, in his current applications, the ALJ addressed the prior applications and found that the issue of disability on or prior to the previous final decision was denied based on *res judicata*. See Robbins v. Secretary of HHS, 895 F.2d 1223, 1224 (8th Cir.1990). Therefore, Plaintiff's adjusted alleged onset date is September 26, 2003.

mechanical parts, operation of a motor vehicle, humidity and wetness, airborne irritants, temperature extremes and loud noise.

(Tr. 17). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a small production machine worker. (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence submitted, denied that request on April 28, 2010. (Tr. 4-8). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 6,7).

## II.  Evidence Presented:

At the time of the administrative hearing on December 6, 2007, Plaintiff was thirty-two years of age and testified that he had an eleventh grade education. (Tr. 364). The record reflects Plaintiff's past relevant work consists of work as a mechanic. (Tr. 372).

The medical evidence in this case reflects the following. Prior to September 26, 2003, Plaintiff sought treatment for an ankle fracture, sinus drainage, right knee pain and swelling status post surgical repair, tendinitis of the right wrist, hand pain, right shoulder pain, a post-op dental infection, and spinal discomfort. (Tr. 121-139, 141-150, 152-153, 271, 274[3], 276-281, 288).

The medical evidence during the relevant time period of September 26, 2003, through March 20, 2008, reflects the following. On October 1, 2003, blood tests revealed Plaintiff was negative for ANA and rheumatoid factors. (Tr. 272).

---

[3]The Court notes this treatment note from Dr. Mark Powell is illegible.

On October 17, 2003, Dr. William C. Kendrick completed a Physical Medical Source Statement. (Tr. 284-287). Dr. Kendrick indicated that he had been treating Plaintiff for six to twelve months for right knee pain and generalized arthralgia. Dr. Kendrick opined Plaintiff could occasionally lift up to twenty pounds and frequently lift/carry up to ten pounds; and could frequently handle and operate foot controls. Dr. Kendrick opined Plaintiff was limited in the ability to perform jobs that required performing a variety of duties. Dr. Kendrick opined that in an eight-hour work day Plaintiff could stand and/or walk one to two hours; and could sit four to five hours, with frequent changes in position. Dr. Kendrick opined Plaintiff would miss work more than three times a month.

On December 27, 2003, Plaintiff entered the Washington Regional Medical Center emergency room complaining of sternum, head, left knee and neck pain resulting from a motor vehicle accident. (Tr. 301-318). Plaintiff's medication consisted of Percocet for knee and back pain. Plaintiff was diagnosed with cervical strain, back strain and a contusion.

On January 1, 2004, Plaintiff underwent a cervical spine x-ray that revealed no abnormal areas of hypermobility. (Tr. 300).

On October 2, 2004, Plaintiff entered the Washington Regional Medical Center emergency room complaining of bilateral hand pain resulting from punching a wall. (Tr. 295-299). Plaintiff was diagnosed with hand contusions.

On March 4, 2005, Plaintiff returned to Kirk Johnson, DC, complaining of localized discomfort involving the neck and mid back and lumbo-sacral spine. (Tr. 288). Dr. Johnson noted Plaintiff's range of motion was restricted and uncomfortable but there were no neurological complications. Dr. Johnson decided to treat Plaintiff conservatively with corrective

therapy. Plaintiff was to return as needed.

On June 12, 2005, Plaintiff entered the Washington Regional Medical Center emergency room complaining of back and right ankle pain resulting from a motor vehicle accident. (Tr. 290-294). Plaintiff also reported that his hands hurt from gripping the steering wheel. Plaintiff's past medical history included pulmonary disease, including chronic bronchitis and nerve damage to his right knee. Plaintiff denied taking any medications. Plaintiff reported that he smoked one and one-half packages of cigarettes a day and sometimes drank every day or once a week. After reviewing x-rays and examining Plaintiff, Dr. James Norys diagnosed Plaintiff with cervical strain. Plaintiff was to follow up with his primary physician if his condition did not improve.

On March 22, 2006, Plaintiff underwent a general physical examination performed by Dr. John L. Garrett. (Tr. 319-325). Plaintiff complained of right knee pain, a recent loss of grip in his hands, a partially torn right rotator cuff, carpal tunnel of the right wrist and chronic bronchitis. Plaintiff reported he had taken Percocet for the past two years for generalized pain. Upon examination, Dr. Garrett noted Plaintiff had full range of motion in his spine and extremities. Dr. Garrett found no evidence of muscle weakness or atrophy and noted Plaintiff's gait and coordination were within normal limits. A limb function examination revealed Plaintiff was able to hold a pen and write; able to touch fingertips to palms; able to grip ninety percent of normal; able to oppose thumb to fingers; able to pick up a coin; able to stand and walk without assistive devices; able to walk on heel and toes; and able to squat and arise from a squatting position with help getting up. Dr. Garrett found Plaintiff had multiple somatic complaints without objective findings. Dr. Garrett opined Plaintiff had no objective limitation in his ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak.

On March 29, 2006, Dr. Ronald Crow, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 329-336). After reviewing all the evidence, Dr. Steve Owens affirmed Dr. Crow's findings on August 18, 2006. (Tr. 340).

On July 25, 2007, Plaintiff underwent a consultative orthopedic evaluation performed by Dr. Alice M. Martinson. (Tr. 341-). Dr. Martinson noted Plaintiff complained of persistent anterolateral right knee pain with locking. Plaintiff reported having considerable difficulty climbing stairs due to right knee pain. Plaintiff reported that his right knee felt undependable but that it had not collapsed. Dr. Martinson noted that Plaintiff used a cane outside of the home. In addition to knee complaints, Plaintiff reported chronic aching in his neck and lower back since a 2003 motor vehicle accident. Plaintiff denied radiation of pain, numbness, or tingling into his lower extremities but noted an ache when bending. Plaintiff also complained of intermittent soreness and popping in his right ankle. Plaintiff reported he had not sought evaluation or treatment for his back and neck and noted he had not seen a physician in more than two years. Plaintiff reported he was not taking any medication. After performing an examination of Plaintiff and reviewing x-rays of Plaintiff's cervical spine, lumbar spine and right knee, Dr. Martinson opined Plaintiff had a clinical history, physical examination and imaging findings

consistent with current subluxation[4] of the right patella. Dr. Martinson found no objective evidence of musculoskeletal or neurologic abnormality in Plaintiff's cervical spine, lumbar spine or right ankle. Dr. Martinson gave Plaintiff a Total Body Impairment rating of three percent for his right knee abnormalities. Dr. Martinson opined Plaintiff had no ratable permanent impairment in his cervical spine, lumbar spine or right ankle.

      On July 25th, Dr. Martinson also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 344-351). Dr. Martinson opined Plaintiff could lift/carry up to ten pounds continuously, eleven to twenty pounds frequently, and twenty-one to fifty pounds occasionally; could sit for a total of eight hours in an eight-hour work day, two hours without interruption, could stand for a total of four hours in an eight-hour day, one hour without interruption; and could walk for a total of four hours in an eight-hour work day, one hour without interruption. Dr. Martinson opined that Plaintiff did not need to use a cane to ambulate. Dr. Martinson opined Plaintiff could continuously use his hands to reach, handle, finger, feel, push and pull. Dr. Martinson opined Plaintiff could occasionally use his right foot to operate foot controls and could frequently use his left foot. Regarding postural activities, Dr. Martinson opined Plaintiff could continuously stoop, kneel, crouch and crawl; occasionally balance; and never climb stairs, ramps, ladders or scaffolds. Dr. Martinson opined Plaintiff could continuously be exposed to unprotected heights, moving mechanical parts, humidity, dust, extreme cold and heat and vibrations.

      On November 29, 2007, Plaintiff was seen by Dr. Kendrick for a medication refill

---

[4]Subluxation is defined as an incomplete or partial dislocation. Dorland's Illustrated Medical Dictionary at 1817, 31st Edition (2007).

-7-

evaluation. (Tr. 352-354). Dr. Kendrick strongly recommended that Plaintiff stop using tobacco. Dr. Kendrick diagnosed Plaintiff with pain in the knee and lower leg, possible reflex sympathetic dystrophy, low back pain and a lipoma (benign fatty lump). Plaintiff was prescribed Percocet.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § §404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

**A.    Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2006. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of September 26, 2003, through December

AO72A
(Rev. 8/82)

31, 2006, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).

### B. Subjective Complaints and Credibility Analysis:

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

Regarding Plaintiff's right knee pain, the record reflects that Plaintiff sought sporadic treatment for knee pain post a 2001 surgical repair. Edwards v. Barnhart, 314 F.3d 964, 967 (8th

Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). In March of 2006 during a consultative examination, Plaintiff complained of right knee pain to Dr. Garrett. Upon examination, Dr. Garrett found Plaintiff had full range of motion in his extremities; no evidence of muscle weakness or atrophy; and a normal gait and coordination. Dr. Garrett found Plaintiff could stand and walk without assistive devices; walk on heel and toes; and could arise from a squatting position with help. Dr. Garrett found no objective limitation in Plaintiff's ability to walk, stand, sit, or lift.

Plaintiff did not report knee pain again until July of 2007, during a consultative evaluation with Dr. Martinson, a board certified orthopedic surgeon. At that time, Plaintiff, who admitted to not seeking treatment in over two years, complained of right knee pain and locking, as well as neck, lower back and right ankle pain. After examining Plaintiff and reviewing x-rays, Dr. Martinson opined that the clinical history, physical examination and imaging findings were all consistent with subluxation of the right patella. Dr. Martinson gave Plaintiff a total body permanent impairment rating of three percent for his right knee and opined Plaintiff could perform basically medium work with some limitations. The record does reveal that Plaintiff received a Percocet refill from Dr. Kendrick in November of 2007; however, that clinic note contains no examination notes and does not show that Plaintiff was given any restrictions. Dr. Kendrick also opined that Plaintiff had possible reflex sympathetic dystrophy but there is no objective medical evidence to support such a diagnosis. Based on the evidence of record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does

-11-

not have a disabling knee impairment.

With regard to Plaintiff's alleged cervical spine, lumbar spine and right ankle pain, the record fails to show that Plaintiff sought on-going and consistent treatment for these impairments. The record shows Plaintiff did report some pain in these areas to emergency room physicians after being involved in motor vehicle accidents in 2003 and 2005; however, with the exception of the treatment after the two accidents, the only time Plaintiff sought treatment for spinal pain during the relevant time period was in March of 2005 when he sought chiropractic treatment from Dr. Johnson. At that time, Dr. Johnson recommended conservative treatment and instructed Plaintiff to return as needed but the record fails to show Plaintiff returned for additional treatment. In March of 2006, Dr. Garrett found Plaintiff had full range of motion in his spine and extremities. Finally in July of 2007, Dr. Martinson found no objective evidence of musculoskeletal or neurologic abnormalities of the cervical spine, lumbar spine or right ankle. Based on the above, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a severe cervical spine, lumbar spine or right ankle impairment.

With regard to Plaintiff's alleged hand impairment, the record reflects Plaintiff sought treatment in the emergency room on October 2, 2004, after punching a wall with his fists. In March of 2006, Dr. Garrett noted Plaintiff had full range of motion in his upper extremities; that he could hold a pen and write; that he could touch fingertips to palm; that he could grip ninety percent of normal; that he could oppose his thumb to fingers; and that he could pick up a coin. In July of 2007, Plaintiff did not report any hand problems to Dr. Martinson and Dr. Kendrick did not diagnose Plaintiff with any hand impairment when he saw Plaintiff for a medication refill in November of 2007. Based on the record as a whole, the Court finds substantial evidence to

AO72A
(Rev. 8/82)

support the ALJ's determination that Plaintiff does not have a severe hand impairment.

Finally, with regard to Plaintiff's alleged depression, there is no indication that Plaintiff sought treatment for any mental health impairment during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability); Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997) (ALJ properly concluded claimant did not have a severe mental impairment, where claimant was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and where his daily activities were not restricted from emotional causes). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a severe mental impairment.

While Plaintiff testified that he did not undergo any mental health treatment, particularly anger management classes, due to the lack of finances, Plaintiff has put forth no evidence to show that he sought low-cost medical treatment or was denied treatment due to his lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In a Function Report dated January 21 2006, Plaintiff reported that he was able to help take care of his two children; able to take care of most personal hygiene needs; able to do some household chores; and able to drive. (Tr. 215-222). However, in the most recent Function Report dated August 7, 2006, Plaintiff reported that he spent all waking hours in a bed or a chair and was basically unable to take care of even his basic personal hygiene needs. (Tr. 231-238).

AO72A
(Rev. 8/82)

However, in this same report he indicated that he was able to drive on his own, manage money and sit down and talk to people four times a month. Interestingly, Plaintiff testified that he was able to do some household chores at the December 6, 2007 administrative hearing.

With regard to the testimony of Plaintiff's friend, the ALJ properly considered his testimony but found it unpersuasive. This determination was within the ALJ's province. Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

    **C.**    **RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."

Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of Plaintiff's treating physician, examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform medium work with limitations. Plaintiff argues that the ALJ improperly disregarded Dr. Kendrick's, Plaintiff's treating family physician's, opinion that Plaintiff could perform less than sedentary work.

"It is the ALJ's function to resolve conflicts among 'various treating and examining physicians.'" Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). "[A] treating physician's opinion is given 'controlling weight' if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.' " Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir.2002). A treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir.1995). Furthermore, it is proper for the ALJ to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)(citations omitted).

In giving more weight to Dr. Martinson's opinion, the ALJ noted that Dr. Martinson was an orthopedic specialist who personally evaluated Plaintiff and reviewed Plaintiff's medical history and imaging studies. While Plaintiff testified at the December 2007 administrative hearing that Dr. Kendrick, a family practitioner, had been his treating physician for the past ten years, in October of 2003, Dr. Kendrick noted he had treated Plaintiff for six to twelve months.

Furthermore, Dr. Kendrick did not provide any objective testing to support his 2003 opinion whereas, Dr Martinson clearly pointed to the objective evidence that she used to determine Plaintiff's capabilities. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D.　Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments do not preclude him from performing work as a small production machine worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.　Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 3rd day of June 2011.

/s/ *Erin L. Setser*
　HON. ERIN L. SETSER
　UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)